IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT WESTGATE,                     )
                                     )
            Plaintiff,               )
                                     )  CIVIL ACTION
v.                                   )
                                     )  No. 08-4136-JAR-GBC
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
            Defendant.               )
_____)

**REPORT AND RECOMMENDATION**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the administrative law judge's (ALJ) denial of plaintiff's request for a consultative examination, the court recommends judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g), AFFIRMING the decision.

Plaintiff applied for DIB and SSI, alleging disability beginning June 30, 2005. (R. 14, 98-108). The applications were denied initially and upon reconsideration, and plaintiff

requested a hearing before an ALJ. (R. 14, 68-69). Plaintiff's request was granted, and plaintiff appeared with his attorney at a video hearing before ALJ Lauren Mathon on March 17, 2008. (R. 14, 31-65). Testimony was taken from plaintiff and from a vocational expert. Id. At the hearing, plaintiff's attorney renewed his request for a consultative examination regarding plaintiff's mental capacity and intelligence. (R. 60). The ALJ considered plaintiff's argument and questioned the vocational expert regarding the evidence cited by plaintiff, but denied the request. (R. 60-64). On May 13, 2008, the ALJ issued a decision in which she found that plaintiff is able to make an adjustment to work existing in significant numbers in the economy. (R. 14-23). Consequently, she found plaintiff is not disabled within the meaning of the Act and denied plaintiff's applications for benefits. (R. 23).

Plaintiff disagreed with the ALJ decision and sought but was denied Appeals Council review. (R. 3-5, 9-10). Therefore, the ALJ's decision is the final decision of the Commissioner. Id. at 3; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review. (Doc. 1).

In reviewing a final decision pursuant to the Social Security Act, the court must determine whether the Commissioner applied the correct legal standard in deciding the question of disability, and whether substantial evidence in the record as a

whole supports the Commissioner's factual findings. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2008); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

Plaintiff makes no allegation of error regarding the Commissioner's application of the five-step evaluation process in this case. The only issue presented by plaintiff for the court's

review is whether the ALJ erred when she declined to order a consultative examination to further develop the record regarding plaintiff's intellectual functioning. (Pl. Br. 1, 8-14). The Commissioner argues there is no error because the record contained sufficient evidence to make an informed decision, and the ALJ properly did so without ordering additional examination.

Shortly before the hearing, plaintiff's counsel sent a letter to ALJ Mathon requesting a post-hearing mental consultative examination.[1] (R. 93-94). In the letter, counsel pointed to evidence in the record showing that plaintiff had been tested in 1992 using the Wide Range Achievement Test - Revised (WRAT-R) and the General Aptitude Test Battery (GATB). Id. Counsel noted that the WRAT-R test results placed plaintiff below the 3rd grade level in reading and spelling and at the beginning of the 4th grade level in arithmetic (R. 290); and the results of the GATB placed plaintiff in the lowest third but above the lowest ten percent of the population in all areas tested. (R. 291). Counsel asserted that the WRAT-R scores "closely correlates moderately with the Wechsler Adult Intelligence Scale" IQ test. (R. 93)(citing Esther Strauss, et al., A Compendium of Neuropsychological Tests: Administration, Norms, and Commentary, 387 (2006)). Counsel stated this is evidence that plaintiff is

---

[1] Counsel's request is undated, but a facsimile header reveals that the letter was faxed from counsel's office on March 6, 2008, eleven days before the hearing. (R. 93-94).

of limited intellectual capacity, that it is possible plaintiff meets or equals Listing 12.06A or 12.06B, and that a consultative examination is necessary to adequately assess plaintiff's cognitive abilities. (R. 93-94).

At the hearing, counsel renewed his request for a consultative examination and pointed to the WRAT and GABT testing evidence cited in his earlier request. (R. 60). Counsel stated his belief that this evidence supports an inference that plaintiff's IQ is "in the 60 IQ range." Id. Counsel summarized his argument:

> Our point is that this shows that we're dealing with somebody of limited intelligence, limited mental capacity. This hasn't been further assessed. Mr. Westgate doesn't have any IQ testing on the record. There's nothing out there, other than this evaluation, to indicate that we're dealing with borderline mental capacity. I believe this objective testing in these notations indicate that we're looking at somebody who may be at a sub-70 IQ or even possibly a sub-60 IQ which would then bring us into the realm of the listings.

(R. 61).

The ALJ asked, "Why are you raising this now? Why didn't you supply me school records? He would have been tested in the schools." Id. Counsel responded, "I don't know, Your Honor." Id. Thereafter, the ALJ reopened the hearing and recalled the VE to the stand. She instructed the VE to consider the report from "Academic Testing" to the end (R. 289-92), and asked if an individual with the limitations given could perform the jobs

suggested in the VE's earlier testimony. The VE indicated that with those limitations, such a person could perform both jobs previously suggested, "When it's written like in the third grade reading level."[2] (R. 63).

The ALJ stated her decision, "I see no reason to have any further testing especially in light of your failure to provide school records that would or would not justify the IQ at base level. Therefore, your request is denied." Id. And, counsel stated his objections to the ALJ's determination:

> Your Honor, I'm going to have to argue with your denial of the request for a consultative examination. I think that we've established that Mr. Westgate does have these deficiencies and that a consultative examination would be crucial in determining whether or not he meets the listings and I believe it's listing 12.02, establishing that -- a borderline IQ. Other than that, we don't have the school records, I understand. We don't have those available but we do have this evaluation that was performed in assistance of vocational rehab, indicating that he has some very significant deficiencies in reading, spelling, mathematics and additional portions of this also indicate that he's in the lowest third, exclusive of the bottom top [sic] 10 percent, in general learning ability, verbal aptitude, numerical aptitude, spatial perception, form perception, and clerical perception.

(R. 64).

As plaintiff and the Commissioner both acknowledge, the Commissioner has considerable discretion in deciding whether to

---

[2]The VE had earlier testified that for someone who is below a third grade level in spelling or reading, 500,000 out of one million potential security guard jobs would be available in the national economy. (R. 59).

order a consultative examination. (Pl. Br. 9); (Comm'r Br. 5); (both citing Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 778 (10th Cir. 1990)). The Tenth Circuit has explained the standard applicable to a determination whether a consultative examination must be performed. Hawkins v. Chater, 113 F.3d 1162, 1167-68 (10th Cir. 1997). "[T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." Id. at 1167. "The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment. The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" Hawkins, 113 F.3d at 1168 (citing Glass v. Shalala, 43 F.3d 1392, 1396 (10th Cir. 1994); and quoting Baca v. Department of Health & Human Servs., 5 F.3d 476, 479-80 (10th Cir. 1993)).

Considering the standard presented in Hawkins, the court finds plaintiff has satisfied his burden to present evidence suggesting a reasonable possibility he has deficits in intellectual functioning. Plaintiff has pointed to evidence in

the record suggesting that his reading and spelling is below third grade level, his arithmetic is at the beginning fourth grade level, and his aptitude score is in the lowest third, but not the bottom ten percent, of the population.  (R. 289-92).  The Commissioner provides no basis to reject or discount that evidence.  Moreover, the ALJ accepted that evidence and presented it to the VE for her evaluation of jobs available in the national economy to an individual with the limitations reflected therein.  (R. 63).  The decision reveals that the ALJ accepted the evidence and found that plaintiff has deficits in intellectual functioning which preclude him from working at security guard positions which require preparation of written reports.  (R. 23).

Because plaintiff presented evidence suggesting a reasonable possibility he is limited in intellectual functioning, it became "the responsibility of the ALJ to order a consultative examination <u>if such an examination is necessary or helpful to resolve the issue of impairment</u>."  <u>Hawkins</u>, 113 F.3d at 1167(emphasis added).  The determinative question here is whether a consultative examination is necessary or helpful to resolve the issue of mental impairment in intellectual functioning.  The ALJ found it is not, and the court finds substantial evidence supports that finding.

The ALJ found plaintiff's intellectual functioning would preclude work which requires reading or spelling at greater than

a third grade level or arithmetic at greater than a fourth grade level as revealed by "the WRAT scores in Reading, Spelling, and Arithmetic at Exhibit 1F, page 74 [(R. 290)]." (R. 23). But, she did not believe further testing was necessary.

The ALJ provided six bases for this determination in her decision. (R. 21-22). (1) The report at issue does not contain an IQ score. (2) No evidence suggests plaintiff meets Listing 12.02 despite plaintiff's allegation in the hearing.[3] (3) Despite failure to graduate from high school because he was short one credit in English, plaintiff completed the eleventh grade and never attended special education classes. (4) Plaintiff worked at several jobs after high school, and held the last job as a custodian for eight years. (5) After the vocational testing at issue, plaintiff took vocational rehabilitation training and had a commercial driver's license. (6) In developing the vocational rehabilitation plan, the vocational counselor "determined the claimant could apply common

---

[3]As the Commissioner points out, at the hearing counsel suggested plaintiff's condition meets Listing 12.02 (Organic Mental Disorder), in his letter faxed before the hearing plaintiff suggested his condition meets Listing 12.06A or 12.06B (Anxiety Related Disorders), and in his brief before this court plaintiff suggests his condition meets Listing 12.05C (Mental Retardation). (Comm'r Br. 6)(citing (R. 64, 93); (Pl. Br. 11-14)). Plaintiff's statements <u>in the record</u> tend to obfuscate the point of his argument that plaintiff may be mentally retarded within the meaning of Listing 12.05. Nonetheless, as discussed below, plaintiff points to no evidence <u>in the administrative record</u> suggesting his condition meets any of the Listings 12.02, 12.06, or 12.05.

sense understanding to carry out instructions furnished in written, oral, or diagrammatic form; deal with problems involving several concrete variables in or from standardized situations; add and subtract two digits; and perform basic arithmetic operations with coins as part of a dollar." (R. 21-22). Moreover, at the hearing the ALJ asked why counsel was raising the issue so late in the proceedings and had not provided school records for the ALJ's consideration; and counsel had no answer. (R. 61). The ALJ noted she saw no reason for further testing "especially in light of your failure to provide school records that would or would not justify the IQ at base level." (R. 63).

In his brief to the court, plaintiff asserts that WRAT-T scores "correlate moderately" with IQ scores, that a 1986 study revealed IQ scores average approximately nine points greater than WRAT-T "standard scores," and that later studies affirmed this correlation "to varying degrees." (Pl. Br. 11). He concluded: "Given the nine-point average assumed by the [1986] study, it is likely that Westgate's IQ falls within the 60-70 range," and, presumably, his condition meets listing 12.05C. (Pl. Br. 12). This argument was not made to the ALJ, and the studies and assertions to which plaintiff cites are not in the administrative record, and have no bearing on whether the ALJ's determination was supported by substantial evidence <u>in the record as a whole</u>. Moreover, even if it were willing to consider them (and it is

not), the court is unable to determine the validity of or weight to be given those assertions because copies of the studies cited were not included with plaintiff's brief and are not available to the court. Even if this argument had been made to the ALJ, the court would be compelled to find that plaintiff has not met his burden to present evidence suggesting a reasonable possibility his IQ is below seventy, because plaintiff did not present to the ALJ copies of the relevant studies upon which he relies.

The only portion of this argument which appears in the administrative record is in plaintiff's pre-hearing request in which he asserted that, "Although not an IQ test, the WRAT closely correlates moderately [sic] with the Wechsler Adult Intelligence Scale." (R. 93)(citing Esther Strauss, et al., <u>A Compendium of Neuropsychological Tests: Administration, Norms, and Commentary</u>, 387 (2006)). Again, plaintiff did not include a copy of the relevant portions of the cited work with his letter to the ALJ. Moreover, although the court was able to identify the work cited, was able to locate copies of the book for sale at Amazon.com, and was able to preview certain pages of the book, it was unable to view the entire section relevant here, or even page 387 as cited by plaintiff. The record provides no reason to find that the ALJ had greater access to the work than does the court. From plaintiff's assertion, it is impossible to tell whether WRAT standard scores correlate closely, or correlate moderately with

Wechsler IQ scores, and whether that correlation suggests plaintiff's IQ score is seventy or below as required by the various criteria of Listing 12.05.

At the hearing, plaintiff argued that the evaluation report contained in the record demonstrates "that we're looking at somebody who may be at a sub-70 IQ or even possibly a sub-60 IQ which would then bring us into the realm of the listings." (R. 62). However, plaintiff cited to no authority for his argument beyond the evaluation report. As plaintiff admits, the WRAT-R is not an IQ test, and as the ALJ found, the evaluation report cited does not contain an IQ score. There is simply no record evidence beyond counsels bare assertion from which one might conclude plaintiff's IQ score is seventy or below. Lacking such evidence, there is no reason beyond counsel's bare assertion to consider that plaintiff might be mentally retarded (mildly or otherwise) and that any subparagraph of Listing 12.05 might be applicable to this case.

Plaintiff asserts that the ALJ's reasons for denying plaintiff's request for a consultative evaluation are insufficient to support the denial. (Pl. Br. 12-13). The court disagrees. First, plaintiff only recognized three of the six reasons stated by the ALJ ((3) plaintiff completed the eleventh grade and did not attend special education classes; (4) plaintiff worked at several jobs after high school, and held the last job

as a custodian for eight years; and, (5) after the vocational testing at issue, plaintiff took vocational rehabilitation training), and disregarded any of the additional reasons implied by the ALJ at the hearing.

Second, as justification for his argument, plaintiff points to Muntzert v. Astrue, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007), in which the court pointed out that Listing 12.05(C) contemplates that a mildly mentally retarded person will be able to work, but that if the individual develops a "physical or other mental impairment imposing an additional and significant work-related limitation of function," he may lose the ability to function on the job. Id.(quoting 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C)). He then argues, "the fact that Westgate has a history of continuous employment in the past is irrelevant to whether he became disabled due to the worsening of his shoulder injury." (Pl. Br. 12).

Plaintiff's argument from Muntzert assumes, without evidence in the record in support of that assumption, that plaintiff is mildly mentally retarded. The court in Muntzert found that "to meet Listing 12.05(C), a claimant must show: (1) evidence of onset of mental retardation before age twenty-two, (2) a valid IQ score of 60 through 70, and (3) another severe impairment." Id., 502 F. Supp. 2d at 1153. Here, plaintiff has a severe combination of impairments consisting of a left hand and shoulder

injury in 1991, and reflex sympathetic dystrophy of the left arm. (R. 16). Therefore, he clearly meets the third criteria of Listing 12.05(C). But, plaintiff points to no record evidence (other than counsel's bare assertion) that he meets the first or second criteria (onset of mental retardation before age twenty-two, or a valid IQ score of 60 through 70).

On the other hand, most of the reasons given by the ALJ for denying the request for a consultative exam cut against finding plaintiff's condition meets the first or second criteria of the Listing. (1) The report at issue does not contain an IQ score. (2) No evidence suggests plaintiff meets Listing 12.05C. (3) Plaintiff completed the eleventh grade, did not attend special education classes, and did not graduate from high school merely because he was short one credit in English. (5) Plaintiff had a commercial driver's license and took vocational rehabilitation training. (6) A vocational counselor "determined the claimant could apply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form; deal with problems involving several concrete variables in or from standardized situations; add and subtract two digits; and perform basic arithmetic operations with coins as part of a dollar." (R. 21-22)(citing Ex. 1F/70 (R. 286)). Moreover, counsel gave the ALJ no explanation for the failure to provide plaintiff's school records, perhaps the best potential evidence

-14-

regarding whether plaintiff had an IQ score of 70 or below, and whether the alleged mental retardation had an onset before age twenty-two.

As the Tenth Circuit has repeatedly noted, "The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment. The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" Hawkins, 113 F.3d at 1168 (citing Glass, 43 F.3d at 1396; and quoting Baca, 5 F.3d at 479-80). In light of the administrative record and the applicable legal standard, the ALJ properly found a consultative examination is not necessary or helpful to resolve the issue of impairment in the circumstances. Against the substantial evidence cited by the ALJ in her decision to deny plaintiff's request, was counsel's bare assertion that plaintiff's mental functioning was more severely limited than the ALJ acknowledged, and that plaintiff's IQ was sub-70 and might be sub-60. The court finds no error.

**IT IS THEREFORE RECOMMENDED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the

parties may serve and file written objections to this recommendation within fourteen days after being served with a copy.  Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this <u>20th</u> day of January 2010, at Wichita, Kansas.

<u>s:/   Gerald B. Cohn</u>
**GERALD B. COHN**
**United States Magistrate Judge**
